[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

-------------------------------------------

No. 06-14777
Non-Argument Calendar

-------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 12, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00103-CV-1-MMP-AK

DELORIS BURKETT, Individually and as
Personal Representative of the Estate of
Mark Burkett, Deceased,

Plaintiff-Appellant,

versus

ALACHUA COUNTY,
COREY WARREN,
LEE HUDSON,
JAMES ELLIOTT,
DAVID REED, et al.,

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Florida
----------------------------------------------------------------

**(October 12, 2007)**

Before EDMONDSON, Chief Judge, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Deloris Burkett ("Plaintiff"), appearing individually and as representative of the estate of her deceased son, Mark Burkett ("Burkett"), appeals the grant of summary judgment to Alachua County, Florida, the Sheriff of Alachua County (the "Sheriff"), and Alachua County Jail correctional officers sued in their individual capacity (the "Correctional Officers") on her 42 U.S.C. § 1983 claim. No reversible error has been shown; we affirm.

We review de novo the grant of summary judgment. Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). Summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence in the light most favorable to the non-moving party. Beck v. Prupis, 162 F.3d 1090, 1096 (11th Cir. 1998).

In the early morning hours of 13 June 2001, Gainesville Police Officers responded to a call from Plaintiff that her 18 year-old son was acting very strangely.[1] Plaintiff requested that officers take Burkett for a psychiatric evaluation. Although Burkett, who was 6'2'' and weighed approximately 245 pounds, initially did not resist officers' attempt to place him into the police car,

---

[1] According to Plaintiff's complaint, Burkett "had exhibited unusual behavior throughout the day, including detachment, irrationality and other behaviors consistent with mental and emotional instabilities."

Burkett became agitated as he approached the police car. As Burkett's father was helping Burkett to the car, Burkett grabbed his father's shirt, cocked his head back, and "head-butted" his father. Officers struggled to place Burkett on the ground; and Burkett bit the hand of one of the officers. Burkett also kicked at other officers. Officers then took Burkett to the Alachua County Jail.

Burkett was placed into a holding cell around 4 a.m.; and he banged on his cell door and shouted obscenities until around 8 a.m., when officers entered Burkett's cell to take him to his first appearance before a judge. Officers ordered Burkett to lie down on the floor so that officers could handcuff him; but Burkett was unresponsive to this command. An officer then shot Burkett with a taser gun and handcuffed him. At his first appearance, Burkett continued to act strangely; and the presiding judge ordered that Burkett receive a mental health evaluation. The judge also ordered that a blood sample be taken from Burkett.[2]

At approximately 12:00 p.m., Burkett received a shot to sedate him. At 3:00 p.m., officers and a nurse entered Burkett's cell to draw blood from him. Burkett was still handcuffed and shackled at his legs. Burkett did not respond to an officer's orders to lie down on the floor; so the officer grabbed Burkett by the arm.

---

[2]Because Burkett had engaged in a physical struggle with the officers who picked him up from Plaintiff's home, including biting one of them, the judge ordered that Burkett receive an HIV test.

Burkett became agitated, moved towards the officers, and began kicking his legs. During this altercation, the vials carried by the nurse into Burkett's cell were knocked to the ground. Several officers wrestled Burkett to the floor, where he was held face down. An officer held a folded-up blanket up to Burkett's head.[3] Burkett continued to resist being restrained by the officers. An officer used a stun gun against Burkett; and another officer administered "knee strikes" to Burkett's outer thigh. Officers then placed Burkett into a "three-point restraint," which linked the restraints around his wrists and ankles behind his back. After officers placed Burkett in the three-point restraint, the blanket was removed from the side of Burkett's head. Burkett stopped moving; and medical help arrived at Burkett's cell. The medical personnel asked that Burkett's restraints be removed, which took up to two minutes. Burkett had stopped breathing; and medical personnel conducted CPR. Burkett was transferred to a hospital, where he later was pronounced dead.[4]

---

[3]One officer testified that the blanket was used to prevent Burkett from biting an officer. Although another officer in Burkett's cell testified that he did not remember seeing a blanket used against Burkett, because we construe the facts in the light most favorable to Plaintiff, we will assume that a blanket was held up to Burkett's head.

[4]Experts disagreed about the cause of Burkett's death. One expert concluded that Burkett's death was the result of traumatic brain injury; and another expert determined that Burkett died as a result of "acute exhaustive mania," which occurs in schizophrenic patients who experience "agitation, paranoid delusion and combative behavior followed by cardiovascular collapse and death when efforts are made to restrain them." The latter expert noted that schizophrenia runs in Burkett's family. We construe this conflicting evidence in the light most favorable to Plaintiff.

Plaintiff asserts that the Correctional Officers violated the Fourth Amendment by using excessive force against Burkett in an attempt to receive a blood sample from him.[5] Plaintiff also argues that the Correctional Officers violated the Due Process Clause of the Fourteenth Amendment by acting with deliberate indifference to Burkett's mental health.[6] About this claim, Plaintiff argues that the Correctional Officers ignored Burkett's medical needs by applying a taser gun to him, injecting him with a sedative, and physically restraining him. In addition, Plaintiff contends that Alachua County and the Sheriff failed to train officers or to implement policies on how to handle mentally ill detainees and on

---

[5]"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," and require a showing of deliberate indifference to a substantial risk of serious harm. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996). But Plaintiff asserts protection under the Fourth Amendment, which is commonly an easier standard for a plaintiff to meet. "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit." Hicks v. Moore, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005). Here, the district court analyzed Plaintiff's excessive force claim under the Fourth Amendment; and the Correctional Officers agree that, based on the timing of Burkett's arrest and booking, the district court's approach appears to be the "most logical." Because the Correctional Officers do not argue that Burkett's claim concerns acts separate from his seizure and do not challenge the district court's use of a Fourth Amendment analysis, we will assume -- based on the circumstances of this particular case -- that Burkett was still being seized; and we will analyze Plaintiff's claim under the Fourth Amendment.

[6]Claims of deliberate indifference to a serious medical need of a pretrial detainee, such as Burkett, are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to similar claims by convicted prisoners. See Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

5

the appropriate use of force, which resulted in deliberate indifference to Burkett's rights.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To receive qualified immunity, the defendant must prove that he was acting within the scope of his discretionary authority. Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1267 (11th Cir. 2003). "[T]he burden [then] shifts to the plaintiff to demonstrate that qualified immunity is not appropriate" by showing (1) that a constitutional violation occurred and (2) that the constitutional right was clearly established. Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003). Because the parties do not dispute that the Correctional Officers were acting within their discretionary authority, we consider whether the Correctional Officers violated a clearly established constitutional right.

We begin with Plaintiff's Fourth Amendment claim. To determine if excessive force was used, we "ask whether a reasonable officer would believe that [the] level of force [was] necessary in the situation at hand." Lee, 284 F.3d at 1197. Therefore, "[a]n officer will be entitled to qualified immunity if his actions

6

were objectively reasonable -- that is, if a reasonable officer in the same situation would have believed that the force used was not excessive." Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998); see Vinyard, 311 F.3d at 1347 ("Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, [instead of] with the 20/20 vision of hindsight.").

Here, considering Burkett's agitation when officers entered his cell to draw blood along with his demonstration of an altered mental state and earlier aggression that included biting an officer, an officer could have believed that the force used was reasonably necessary. When officers were in Burkett's cell for the blood test, Burkett became aggressive; and several officers were needed to restrain him. The Correctional Officers were required to make an instant decision about how to keep Burkett under control and how to secure a blood sample from him. We do not believe that the Correctional Officers applied excessive force in violation of the Fourth Amendment.

We turn to Plaintiff's Fourteenth Amendment (Due Process) claim. To prevail on this claim, Plaintiff must prove that Burkett had an objective medical need and that a government official acted with deliberate indifference to that need. See Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Even assuming that Burkett's mental health condition was an objective medical need, Plaintiff has not

7

demonstrated that the Correctional Officers acted with deliberate indifference to that need, which requires Plaintiff to show that (1) the Correctional Officers knew of a risk of serious harm to Burkett, (2) they disregarded this risk, and (3) their conduct amounted to more than gross negligence. See id. Plaintiff has not alleged that the Correctional Officers delayed or denied Burkett mental health treatment. As discussed, the force used to control Burkett was not excessive; and Plaintiff has not shown that the Correctional Officers' acts reflect more than gross negligence. We see no due process violation here.

Because the Correctional Officers' conduct did not cause Burkett to suffer a constitutional deprivation, we need not decide whether the Correctional Officers were entitled to qualified immunity. See Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001) (the "threshold question" in qualified immunity analysis is whether Plaintiff's allegations, if true, establish a constitutional violation, and that, if no constitutional violation exists, one need not inquire into qualified immunity). In addition, because Plaintiff's complaint failed to state a constitutional deprivation, neither Alachua County nor the Sheriff can be liable under section 1983 based on a failure to train properly the Correctional Officers or to implement policies on mentally ill detainees. See Hicks, 422 F.3d 1253 ("Because we conclude that Plaintiff's constitutional rights were not violated . . . , Plaintiff cannot maintain a

8

[section] 1983 action for supervisory liability [against Sheriff and others] for failure to train."); <u>Rooney v. Watson</u>, 101 F.3d 1378, 1381-82 (11th Cir. 1996) (where plaintiff suffers no constitutional deprivation, courts need not consider policy or custom of municipality).  In sum, we affirm the grant of summary judgment to Defendants.[7]

AFFIRMED.

---

[7]In her reply brief, Plaintiff challenges -- for the first time on appeal -- the district court's grant of summary judgment to Defendants on her state law claims for wrongful death.  Because Plaintiff did not raise this issue in her initial brief, we decline to consider it.  <u>See</u> <u>United States v. Whitesell</u>, 314 F.3d 1251, 1256 (11th Cir. 2002) (arguments raised for the first time in a reply brief are not properly before a reviewing court).