# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**202**

**KA 09-02653**

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

               V                                OPINION AND ORDER

RYAN S. SMITH, DEFENDANT-APPELLANT.

---

MARK D. FUNK, ROCHESTER, FOR DEFENDANT-APPELLANT.

RYAN S. SMITH, DEFENDANT-APPELLANT PRO SE.

MICHAEL J. VIOLANTE, DISTRICT ATTORNEY, LOCKPORT (LAURA T. BITTNER OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Niagara County Court (Sara S. Sperrazza, J.), rendered November 17, 2009. The judgment convicted defendant, upon a jury verdict, of burglary in the first degree (five counts), robbery in the first degree (seven counts), kidnapping in the second degree (three counts), criminal use of a firearm in the first degree (two counts), assault in the first degree, assault in the second degree (two counts), criminal possession of a weapon in the second degree, menacing a police officer, grand larceny in the third degree and resisting arrest.

It is hereby ORDERED that the judgment so appealed from is reversed on the law, the motion to suppress the DNA evidence is granted, and a new trial is granted.

Opinion by PERADOTTO, J.: On appeal from a judgment convicting him upon a jury verdict of, inter alia, five counts of burglary in the first degree (Penal Law § 140.30 [2] - [4]) and seven counts of robbery in the first degree (§ 160.15 [1], [3], [4]), defendant contends in his main and pro se supplemental briefs that County Court erred in denying his motion to suppress DNA evidence because he lacked notice of the application seeking to compel him to provide a buccal swab and because the police used excessive force to obtain the swab. We agree, and we therefore conclude that the judgment should be reversed, defendant's motion to suppress the DNA evidence should be granted, and a new trial should be granted.

I

In July 2006, four men participated in two home invasion-style armed robberies at two residences in Niagara Falls (hereafter, home invasions). In December 2006, two men committed an armed robbery of a

gas station in Niagara Falls (hereafter, gas station robbery). Approximately two years later, defendant was convicted of assault in the third degree in connection with an unrelated crime, and his DNA was collected pursuant to Executive Law § 995. Defendant's DNA was entered into the CODIS system, and there was a "hit" indicating that his DNA matched evidence collected in the 2006 home invasions and the gas station robbery. By an order to show cause in August 2008, the People sought to compel defendant to provide a buccal swab to the Niagara Falls Police Department (NFPD). Defendant did not appear on the return date of the order to show cause, and the court issued an order requiring defendant to provide a buccal swab "to be taken by or at the direction of the [NFPD]." The order indicates that defendant was served with notice of the order to show cause and that the People provided proof of service upon defendant. Defendant submitted to a buccal swab pursuant to the order.

According to the People, after that swab was obtained from defendant, the DNA sample was sent to the incorrect lab and was "compromised." As a result, the People sought an order to collect a second buccal swab from defendant by a letter to the court in September 2008. The court issued a second order requiring defendant to provide the NFPD with another buccal swab. It is undisputed that defendant was not provided with notice of the People's application for a second buccal swab and was not served with the second order. Thereafter, the police approached defendant on a street in Niagara Falls, handcuffed him, and transported him to the police station for the purpose of obtaining a buccal swab. When defendant refused to open his mouth to allow the officers to obtain the buccal swab, the police applied a taser to defendant's bare skin for several seconds, after which they were able to obtain the sample.

II

An order compelling an individual to provide corporeal evidence, such as blood or saliva for DNA analysis, constitutes a search and seizure within the meaning of the Fourth Amendment (see *Skinner v Railway Labor Executives' Assn*., 489 US 602, 618; *Schmerber v California*, 384 US 757, 767; *Matter of Abe A.*, 56 NY2d 288, 295). Although no New York statute expressly authorizes courts to compel uncharged suspects to supply a DNA sample (see *Abe A.*, 56 NY2d at 293-294; *cf.* CPL 240.40 [2]), the Court of Appeals has held that a court may issue an order to obtain a blood sample from a suspect so long as the People establish: "(1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication' that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. In addition, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect's constitutional right to be free from bodily intrusion on the other. Only if this stringent standard is met . . . may the intrusion be sustained" (*Abe A.*, 56 NY2d at 291). Here, the court determined that the People satisfied the requirements of *Abe A.* set forth above, and defendant does not expressly challenge that determination. Rather,

defendant contends that (1) he was denied due process because the second order compelling defendant to provide a buccal swab was not made upon notice to him; and (2) the method of collecting the swab, i.e., the use of the taser, was excessive and objectively unreasonable.  We agree with defendant on both counts, and thus that reversal is required.

III

Addressing first defendant's due process contention, we conclude that defendant's due process rights were violated when he was not afforded an opportunity to appear before the court and contest the second order compelling him to submit to a buccal swab (*see* US Const Amend XIV; NY Const, art I, § 6).  Where, as here, there are no exigencies, we conclude that the People's application for an order to compel a suspect to provide a DNA sample must be made upon notice to the suspect (*see Abe A.*, 56 NY2d at 296; *see also People v King*, 161 Misc 2d 448, 452, *affd* 232 AD2d 111, *lv denied* 91 NY2d 875; *People v Latibeaudierre*, 174 Misc 2d 60, 61-62).  "After all, when frustration of the purpose of the application is not at risk, it is an elementary tenet of due process that the target of the application be afforded the opportunity to be heard in opposition before his or her constitutional right to be left alone may be infringed" (*Abe A.*, 56 NY2d at 296).  Indeed, as the United States Supreme Court stated, "[t]he importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great" (*Schmerber*, 384 US at 770).

We reject the contention of the People that no notice was required because defendant failed to appear in opposition to the People's first application for a buccal swab.  Defendant's failure to object to the first order compelling him to provide a buccal swab does not constitute a waiver to any subsequent such orders inasmuch as each order constitutes a bodily intrusion warranting notice and an opportunity to be heard (*see Schmerber*, 384 US at 770; *Abe A.*, 56 NY2d at 296; *King*, 161 Misc 2d at 452).  Further, we disagree with the dissent that, because defendant received notice of the first application for a buccal swab, the People were not obligated to provide notice of any further such applications.  In our view, it does not elevate form over substance with respect to defendant's due process rights to require the People to provide notice to an uncharged suspect each and every time they seek authorization to invade the individual's body in search of evidence of guilt (*see generally Schmerber*, 384 US at 770; *Abe A.*, 56 NY2d at 296).  Although the People may not need to make a showing of probable cause upon each successive application, defendant could contest, among other things, the need for further buccal swabs and the availability of less intrusive means of obtaining a DNA sample (*see Abe A.*, 56 NY2d at 291).  Inasmuch as the second order pursuant to which the DNA evidence was obtained was entered in violation of defendant's due process rights, we conclude that the DNA evidence must be suppressed on that ground (*see Latibeaudierre*, 174 Misc 2d at 61-62).

IV

    We further conclude that the DNA evidence must be suppressed because the police utilized excessive force to obtain the buccal swab. Claims that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of a person "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard" (*Graham v Connor*, 490 US 386, 388; *see Mazzariello v Town of Cheektowaga*, 305 AD2d 1118, 1119; *Ostrander v State of New York*, 289 AD2d 463, 464).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (*Graham*, 490 US at 396 [internal quotation marks omitted]).  The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight" (*id.*; *see Tracy v Freshwater*, 623 F3d 90, 96).

    Here, we conclude that the use of a taser to obtain the buccal swab was objectively unreasonable under the circumstances (*see Hammer v Gross*, 932 F2d 842, 846, *cert denied* 502 US 980).  Although the crimes at issue are unquestionably serious, the record establishes that defendant posed no immediate threat to the safety of himself or the officers, nor did he attempt to evade the officers by flight (*see Graham*, 490 US at 396).  The testimony at the suppression hearing established that, when the two police officers approached defendant on the street and told him that he had to be transported to the police station, defendant did not resist and entered the police vehicle, even though the police did not tell him why he had to accompany them. While at the police station, defendant was placed in a secure room, where he was handcuffed, seated on the floor, and surrounded by three patrol officers and two detectives.  It is undisputed that defendant did not threaten, fight with, or physically resist the officers at any time; rather, he simply refused to open his mouth to allow the officers to obtain a buccal swab (*cf. Orem v Rephann*, 523 F3d 442, 444-445; *Burkett v Alachua County*, 250 Fed Appx 950, 950-954 [11th Cir.], 2007 WL 2963844, *1-3; *People v Hanna*, 223 Mich App 466, 468, 472-475, *lv denied* 458 Mich 862, *cert denied* 528 US 1131).  Notably, the record reflects that defendant refused to open his mouth for, at most, 10 to 15 minutes before the police used the taser to force him to do so.  Defendant was picked up by the police at approximately 6:00 P.M., and was tased at 6:18 P.M.  During the intervening time, the police drove defendant to the police station, consulted with their superiors, and decided to utilize the taser.  We cannot agree with the suppression court that, after 10 to 15 minutes of asking a suspect to comply with a court-ordered buccal swab of which the suspect had no prior knowledge, it is reasonable for the police to tase a nonviolent, handcuffed, and secured defendant in order to force the suspect into submission (*cf. J.B. Hickey v Reeder*, 12 F3d 754, 759).

Significantly, there were no exigent circumstances to justify the failure to employ a less-intrusive alternative to the use of a taser. An individual's DNA, unlike blood-alcohol content or other types of evanescent evidence, is not susceptible to alteration, destruction or loss if not obtained in a timely manner (*cf. Hanna*, 223 Mich App at 473).

While the People seek to characterize the use of a taser as a "minimal" degree of force and emphasized at the suppression hearing that defendant did not lose consciousness and suffered no visible scarring or injuries, we note that "extreme pain can be inflicted with little or no injury" (*Hickey*, 12 F3d at 757).  The officers who witnessed the tasing incident acknowledged that the use of a taser causes pain and that, upon application of the taser, defendant appeared to be in pain and shouted for the officers to stop using it. Our review of a videotape of the tasing incident supports the conclusion that defendant was in pain upon application of the taser to his bare skin.

Finally, we note that there were reasonable alternatives to the use of the taser.  For example, the police could have arrested defendant for contempt, thereby securing him while awaiting court intervention (*see Abe A.*, 56 NY2d at 292-293).  Indeed, after tasing defendant and obtaining the buccal swab, the police in fact arrested him for criminal contempt.  The People then could have sought and, upon good cause shown, received judicial approval to use physical force if necessary to extract the DNA sample (*see United States v Bullock*, 71 F3d 171, 176, *cert denied* 517 US 1126).

We thus conclude that the use of a taser to obtain the buccal swab was objectively unreasonable under the circumstances (*see Graham*, 490 US at 399), and that the DNA evidence therefore should have been suppressed as the product of an unconstitutional search and seizure (*see generally Matter of Victor M.*, 9 NY3d 84, 86; *People v Whetstone*, 47 AD2d 995, 995).

V

Contrary to defendant's further contention, we conclude that the court did not abuse its discretion in denying that part of his omnibus motion seeking to sever the counts relating to the home invasions from the counts relating to the gas station robbery (*see generally People v Owens*, 51 AD3d 1369, 1370-1371, *lv denied* 11 NY3d 740; *People v Dozier*, 32 AD3d 1346, 1346, *lv dismissed* 8 NY3d 880).  As defendant correctly concedes, the charges relating to the home invasions and those relating to the gas station robbery were properly joinable pursuant to CPL 200.20 (2) (c) because, "[e]ven though based upon different criminal transactions, . . . such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law" (*id.*).  The record belies defendant's contention that there was substantially more proof of his involvement in the home invasions than the gas station robbery (*see* CPL 200.20 [3] [a]). Defendant was connected to both crimes by the presence of his DNA at or near the crime scenes, and no witnesses to either incident were

able to identify defendant.

VI

In light of our conclusion with respect to suppression of the DNA evidence, there is no need to address defendant's remaining contentions. Accordingly, we conclude that the judgment should be reversed, defendant's motion to suppress the DNA evidence should be granted, and a new trial on the indictment should be granted.

All concur except SCUDDER, P.J., who dissents and votes to affirm in the following Opinion: I respectfully dissent. In my view, under the circumstances presented here, defendant's due process and Fourth Amendment rights in connection with obtaining a buccal swab from defendant's mouth were not violated and thus I disagree with the majority's determination to reverse the judgment and grant defendant's motion to suppress the DNA evidence retrieved from that swab.

It is essentially undisputed that County Court properly determined that the People established that there was probable cause to believe that defendant committed both the home invasions and the gas station robbery based upon DNA located at both crime scenes that matched information regarding defendant's DNA contained in the CODIS data base. With respect to defendant's due process rights, it is well established that defendant was entitled to notice of the application to obtain a buccal swab in order to provide him with the opportunity to contest the People's contention that probable cause existed to believe that he was involved in the robberies before he could be compelled by police to provide a buccal swab (*see generally Matter of Abe A.*, 56 NY2d 288, 296). The issue then is whether defendant's due process rights were violated when the People asked the court to issue a second order because the sample obtained pursuant to the first order was compromised, without providing notice to defendant of that request. I respectfully disagree with the majority's conclusion that defendant's due process rights were violated by the failure of the People to provide defendant with notice of that second request.

Defendant was "afforded the opportunity to be heard in opposition" to the People's initial application (*id.*), and he failed to appear to oppose the application. The People's second application was nothing more than a duplicate of their first application, which had been determined by the court to have met the "stringent standard" that a buccal swab was a minimally intrusive means to obtain evidence that was critical for the investigation of serious crimes (*id.* at 291). In my view, defendant was properly given the requisite notice that the People sought evidence in the form of a buccal swab to connect him to both the home invasions and the gas station robbery (*see id.* at 296), and thus the court properly determined that his due process rights were not violated when the People sought a duplicate order. In my view, to conclude otherwise, under the unique circumstances presented here, improperly places the form of the required due process protection over its substance.

I also respectfully disagree with the majority that defendant's

Fourth Amendment rights were violated by the very brief use of a taser to effectuate defendant's cooperation to obtain the buccal swab. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (*Graham v Connor*, 490 US 386, 396 [internal quotation marks omitted]).  Although defendant did not physically resist the police, he repeatedly and adamantly refused to open his mouth to provide the requested DNA sample and, indeed, repeated several times that the police would have to "tase" him to get a sample.  Inasmuch as the police were familiar with defendant's violent tendencies, and after consultation with their superiors, the officers made the determination that the risk to officer safety and to defendant's safety would be reduced by the use of the drive stun on defendant's shoulder, rather than by an attempt to compel defendant to open his mouth by any other means requiring the use of force.  They therefore placed defendant on the floor to reduce the risk of injury in the event that defendant struggled or fell.  The recording device on the taser established that it was in use for a total of five seconds.  An officer testified that it takes 1½ seconds for the device to turn on and 1½ seconds to turn off.  Thus, although pain was inflicted for approximately two to three seconds, the officer testified that the pain experienced by defendant stopped immediately when the trigger was off.  Although I do not disagree with the majority that the police could have sought judicial intervention for permission to use force (*see United States v Bullock*, 71 F3d 171, 176, *cert denied* 517 US 1126), I nevertheless submit that the failure to do so does not render the officers' actions " 'objectively [un]reasonable' in light of the facts and circumstances confronting them" (*Graham*, 490 US at 397).  In my view, because defendant was "actively," albeit not physically, resisting the police, and because another method to obtain the sample would likely result in injury to defendant and/or the officers, and in light of the seriousness of the crimes, the test whether the use of force was reasonable under the Fourth Amendment has been met here (*id.* at 396).

The United States Supreme Court, while recognizing that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State" (*Schmerber v California*, 384 US 757, 767), further recognized that there are circumstances warranting intrusion and thus provided guidance for courts in determining whether the Fourth Amendment has been violated in a particular circumstance (*see id.* at 769-771).  In my view, the instant circumstance is one in which the intrusion by the State was warranted.  First, the procedure utilized to obtain the necessary DNA evidence, i.e., a buccal swab, did not pose any risk to defendant's health or safety (*see Bullock*, 71 F3d at 176).  Second, defendant's dignity was not infringed upon by using a buccal swab to obtain the evidence, despite the need to use reasonable force in light of defendant's steadfast refusal to open his mouth (*see id.*).  Third, the "need for the scientific evidence from the [saliva] samples was great" (*id.* at 177).  Thus, I submit that the court properly determined that defendant's Fourth Amendment rights were not violated.

Accordingly, I would therefore affirm the judgment.

Entered:  March 16, 2012                    Frances E. Cafarell
                                            Clerk of the Court