THIRD DEPARTMENT, MAY, 2014

(May 1, 2014)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL WALKER JR., Appellant. [985 NYS2d 166]—

Lahtinen, J. Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered January 6, 2011, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, criminal use of a firearm in the first degree, burglary in the second degree and criminal possession of a weapon in the second degree.

In June 2009, a man armed with a semi-automatic handgun, wearing a bandana over his face and a Yankees cap, entered a Domino's Pizza in Rensselaer County, where he directed the only two patrons to lie on the floor. The store's manager rushed at and tackled the perpetrator, whose gun fired and shot the manager in the leg. A second perpetrator, who was also wearing a bandana over his face, then entered through a back door and he shot the manager several times in the head and chest, causing him to sustain serious injuries, which he survived. During

the ensuing investigation, defendant became a suspect when DNA from the Yankees cap, which had fallen off of the first perpetrator at the scene, matched DNA found on a cell phone registered to defendant that had been dropped at the scene of a separate (uncharged) crime in Queens County. Police obtained and executed a search warrant in April 2010 to acquire a DNA sample from defendant.

Thereafter, defendant was charged in a six-count indictment. His motion to suppress the DNA evidence taken from him in April 2010 was denied without a hearing. Following a trial, a jury convicted him of attempted murder in the second degree, criminal use of a firearm in the first degree, burglary in the second degree and criminal possession of a weapon in the second degree. He was sentenced to concurrent prison terms of 25 years on the two class B felonies and 15 years on the two class C felonies, as well as five years of postrelease supervision on each count. Defendant appeals.

The verdict was supported by legally sufficient evidence and was not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). Defendant's DNA was on the Yankees cap left at the scene by the first perpetrator and his height and weight—as well as being left-handed—were generally consistent with descriptions of the first perpetrator given by witnesses. Tracking records from his cell phone placed him in the vicinity even though, at the time, he resided in Queens County. Defendant did not deny being in the area, but explained that he often visited because he used to live in Rensselaer County when in college and still had friends there. The Yankees cap had DNA of other unidentified individuals and defendant claimed that he had left the cap and various other clothing and personal items in an apartment in Rensselaer County that he had moved out of in July 2007. This proof created credibility issues for the jury. Further, there was ample evidence to reasonably infer that the two men intended to act together to commit a robbery at the premises, they entered the premises armed with loaded guns, they were intent on using deadly force if necessary to accomplish their objective and, as part of the scheme, the second perpetrator entered through a private area that was not open to the public. When the manager attempted to thwart their plans, he was shot first in the leg and then repeatedly in the head and chest. Viewed in the light most favorable to the People, there was legally sufficient proof to support the verdict as to each crime (*see People v Ramos*, 19 NY3d 133, 136 [2012]; *People v Fullard*, 233 AD2d 757, 759 [1996], *lv denied* 89 NY2d 1092 [1997]). Moreover, after viewing the evidence in the record in a

neutral light, while according deference to the jury's credibility determinations, we are unpersuaded that the jury's verdict was against the weight of the evidence (*see People v Romero*, 7 NY3d 633, 643-644 [2006]; *People v Browne*, 307 AD2d 645, 645-646 [2003], *lv denied* 1 NY3d 539 [2003]; *People v Lewis*, 300 AD2d 827, 828-829 [2002], *lv denied* 99 NY2d 630 [2003]).

The DNA evidence taken from defendant in April 2010 via a no-knock search warrant issued without notice to him when he was a suspect should have been suppressed. "[A] search warrant authorizing an intrusion into the human body for the purpose of obtaining corporeal evidence, such as bodily fluids for DNA analysis, is subject to the constraints of the Fourth Amendment" (*People v Fomby*, 103 AD3d 28, 29 [2012], *lv denied* 21 NY3d 1015 [2013]; *see People v Smith*, 95 AD3d 21, 24 [2012]). The guidelines for obtaining a search warrant for corporeal evidence are well established (*see Matter of Abe A.*, 56 NY2d 288, 291 [1982]; *People v Oliver*, 92 AD3d 900, 901 [2012], *lv denied* 19 NY3d 965 [2012]; *People v Pryor*, 14 AD3d 723, 725 [2005], *lv denied* 6 NY3d 779 [2006]; *People v King*, 232 AD2d 111, 116 [1997], *lv denied* 91 NY2d 875 [1997]). Significantly, where "there is 'no exigency, . . . [then] frustration of the purpose of the application is not at risk' and, in that case, 'it is an elementary tenet of due process that the target of the application be afforded the opportunity to be heard in opposition before his or her constitutional right to be left alone may be infringed' " (*People v Fomby*, 103 AD3d at 30, quoting *Matter of Abe A.*, 56 NY2d at 296; *see People v Smith*, 95 AD3d at 25; *see also Matter of Ford v Vaughan*, 196 AD2d 869, 869 [1993]).

In his motion to suppress, defendant challenged the DNA swabbing that occurred in April 2010 as violative of his constitutional rights, stated that he did not consent to the search, and attached the search warrant application and the search warrant. The search warrant application to obtain DNA from defendant included the unsubstantiated and inaccurate allegations that the "search warrant cannot be executed between the hours of 6:00 A.M. and 9:00 P.M.," "the property sought will be removed or destroyed if not seized forthwith," and "[t]he property sought may be easily and quickly destroyed or disposed of." There were no factual allegations reflecting exigent circumstances justifying the lack of any notice to defendant of the application to obtain a DNA sample from him. He could not destroy or dispose of his own DNA, and the People's speculation in their brief that he might have fled was not alleged or supported by facts in the application.

The ensuing search warrant inconsistently stated both that it

was to be executed between 6:00 a.m. and 9:00 p.m. and that it could be executed at any time day or night; and it further authorized police to enter the premises where defendant resided without giving notice of their authority or purpose. Under the authority of the warrant, police arrived unannounced at the place where defendant lived demanding his DNA. The total absence of notice to defendant of the search warrant application, which had obvious defects regarding the manner purportedly necessary to obtain defendant's DNA, violated his constitutional rights and the DNA obtained in such search must be suppressed and the judgment reversed (*see People v Fomby*, 103 AD3d at 30; *People v Smith*, 95 AD3d at 25).

Contrary to the People's argument, we find that, although it could have been more clearly articulated, defendant nonetheless sufficiently preserved this issue among his many challenges to the DNA evidence and, accordingly, it is not necessary to address his alternative argument that a failure to preserve the issue would have constituted ineffective assistance of counsel under the circumstances of this case.*

Defendant's contention that his sentence was harsh and excessive is academic.

Peters, P.J., McCarthy and Garry, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for further proceedings not inconsistent with this Court's decision.

---

* We further note that, had the issue not been properly preserved, we would exercise our interest of justice jurisdiction given the particular circumstances (*see People v Durrin*, 32 AD3d 665, 666-667 [2006]).