*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 17, 2014                    105126
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

KARSEEN J. ATKINSON,
                    Appellant.
_____


Calendar Date:  October 8, 2013

Before:  Lahtinen, J.P., McCarthy, Egan Jr. and Lynch, JJ.

                    _____


        Cynthia Feathers, Glens Falls, for appellant, and appellant
pro se.

        Gwen Wilkinson, District Attorney, Ithaca (Andrew M.
McElwee of counsel), for respondent.

                    _____


McCarthy, J.

        Appeal from a judgment of the County Court of Tompkins
County (Rowley, J.), rendered March 23, 2012, upon a verdict
convicting defendant of the crimes of criminal possession of a
controlled substance in the third degree (two counts) and
criminal possession of a weapon in the fourth degree.

        When this matter was previously before this Court, we
decided several issues in favor of the People, but remitted for
County Court to hold a hearing to determine whether to suppress
the cocaine recovered from defendant's mouth (111 AD3d 1061
[2013]).  That hearing was limited to resolving factual issues
regarding the use of tasers and whether such use might be
considered excessive force so as to render the search and seizure

unreasonable, thereby requiring suppression (id. at 1063).
Thereafter, County Court held a hearing and denied suppression.
Now addressing the one remaining issue, we affirm.

Claims that the police used excessive force to effect a
seizure "are properly analyzed under the Fourth Amendment's
'objective reasonableness standard'" (Graham v Connor, 490 US
386, 388 [1989]; accord People v Smith, 95 AD3d 21, 26 [2012]).
This analysis "requires a careful balancing of the nature and
quality of the intrusion on the individual's Fourth Amendment
interests against the countervailing governmental interests at
stake" (Graham v Connor, 490 US at 396 [internal quotation marks
and citations omitted]).  The proper application of this test of
objective reasonableness "requires careful attention to the facts
and circumstances of each particular case, including the severity
of the crime at issue, whether the suspect poses an immediate
threat to the safety of the officers or others, and whether he
[or she] is actively resisting arrest or attempting to evade
arrest by flight" (id.; accord People v Smith, 95 AD3d at 26; see
People v Price, 112 AD3d 1345, 1346 [2013]).  Courts must also
take into account "that police officers are often forced to make
split-second judgments — in circumstances that are tense,
uncertain, and rapidly evolving — about the amount of force that
is necessary in a particular situation" (Graham v Connor, 490 US
at 397; see Pacheco v City of New York, 104 AD3d 548, 549
[2013]).

According to the testimony at the suppression hearing, the
police apprehended defendant on a parole violation, aware that he
was a convicted felon who had absconded from parole and was
allegedly trafficking drugs and in possession of a weapon.  After
police stopped the car he was riding in, defendant refused to
show his hands or get out of the vehicle when ordered to do so.
During and after his removal from the car, he used his legs to
resist.  Once placed upon the ground, he kept his hands under his
body and refused to comply with orders that he put his hands
behind his back.  He also failed to comply with orders to open
his mouth or spit out what was in his mouth, despite warnings
that he would be tased.  At that point, believing that defendant
had narcotics in his mouth and not knowing whether he had a
concealed weapon, an officer tased him on the calf — through his

pants — using a dry stun.[1]  The tase lasted approximately four seconds, although defendant kicked his leg so the taser may have lost connection with him before that full time had elapsed. Defendant opened his mouth, revealing a plastic baggie with a white substance, but he quickly clamped his mouth shut.  The same officer again ordered defendant to open his mouth and spit out what was inside.  That officer tased defendant's leg a second time, this time for three seconds.  At the same time, and apparently not knowing that he was acting simultaneously with the first officer, an investigator tased defendant's other leg. Defendant then spit the plastic baggie, which contained cocaine, out of his mouth and allowed officers to place him in handcuffs. The entire incident, from the time that defendant was removed from the car until the cocaine was recovered, occurred in the span of one minute.

This was a highly charged situation, where defendant refused to comply with any orders.  The police were unsure if defendant had a weapon, as they had previously been informed that he was armed, he refused to show his hands and he kept them under his body after he was down on the ground.  The police also saw what they suspected — correctly — were narcotics in defendant's mouth.  Aside from wanting to secure that evidence, the officer and investigator testified that it can be dangerous or deadly for an individual to swallow an unknown quantity of narcotics. Accordingly, the officers were trying to protect defendant's health and safety by seeking to remove the drugs from his mouth. The tasers were used after warnings and in response to defendant's actions and refusal to comply with orders, which created a potentially dangerous situation for the officers and

---

[1]  The transcript refers to this as a "drive stun," but it appears that this is merely a typographical error.  A dry stun, which is performed by removing the cartridge from the taser, sends an arc of electricity across the head of the taser that is pressed against the suspect, causing pain to induce compliance. In contrast, if the cartridge is not removed, probes are shot from the taser into the suspect, the arc of electricity goes between the two probes, and this usually results in neuromuscular interruption.  The latter is generally more painful.

defendant himself.  The police were required to react quickly to safely resolve the situation.  Under the circumstances, the police officers' response was reasonable (see Pacheco v City of New York, 104 AD3d at 550; compare People v Smith, 95 AD3d at 26-27).  Thus, County Court properly denied defendant's motion to suppress the cocaine.

Lahtinen, J.P., Egan Jr. and Lynch, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court