People v Zirpola (2019 NY Slip Op 02585)





People v Zirpola


2019 NY Slip Op 02585


Decided on April 4, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 4, 2019

108779

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
FREDERICK ZIRPOLA, Appellant.

Calendar Date: February 14, 2019

Before: Clark, J.P., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Stephen W. Herrick, Public Defender, Albany (Jessica M. Gorman of counsel), for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Noel Mendez of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.) rendered January 15, 2016, convicting defendant upon his plea of guilty of the crimes of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.
In March 2015, a known confidential informant (hereinafter the CI) working with the City of Albany Police Department informed the police that defendant wanted to sell a gun. The police and the CI arranged a controlled buy, and, on the way to the sale location, defendant was arrested. Defendant was thereafter charged by indictment with criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Following a suppression hearing, County Court, among other things, denied defendant's motion to suppress physical evidence. Subsequently, defendant pleaded guilty as charged, specifically retaining his right to appeal and to challenge the denial of his suppression motion. County Court sentenced defendant, as a violent felony offender with a prior nonviolent felony, to a prison term of seven years, to be followed by five years of postrelease supervision, on his conviction of criminal possession of a weapon in the second degree, as well as a lesser concurrent prison term on the remaining conviction. Defendant appeals.
Initially, defendant contends that the indictment should be dismissed because his due process rights were violated. Because that issue was not raised before County Court, however, it is not preserved for our review (see CPL 470.05 [2]; People v Boland, 89 AD3d 1144, 1146 [2011], lv denied 18 NY3d 955 [2012]). Next, defendant contends that his warrantless arrest was not supported by probable cause. We disagree. At the suppression hearing, Scott Gavigan, a detective with the City of Albany Police Department, testified that he had known the CI for over 10 years, during which the CI had provided information that led to arrests and convictions on at least 50 occasions. Gavigan further testified that, in March 2015, the CI informed him that an individual at his house was looking to sell "a [9] millimeter semi-automatic [g]lock with a laser [*2]sight for $600" or drugs. Gavigan instructed the CI to tell the seller that there was a prospective buyer who would be waiting in the rear of a nearby CVS with $600 to buy the gun. The CI described the seller as an older white male and gave a description of what he was wearing, including a white fishing hat. The CI also informed Gavigan that he would walk with the seller to the CVS so that Gavigan would know exactly who he was. Gavigan explained that he went to the area of the CVS along with other police officers and, under their observation, the CI went into his house and, approximately 15 minutes later, the CI and defendant, who matched the description of the seller, left the CI's house and walked down the street towards the CVS. Gavigan then instructed other police officers to arrest defendant. Gavigan testified that the arrest occurred 30 minutes to an hour after the CI's initial call. After the arrest, defendant was searched and, in the waistband of his pants, he had, among other things, a 9 millimeter gun that matched the CI's description, as well as ammunition for that gun.
Probable cause "exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been or is being committed" (People v Sudler, 75 AD3d 901, 902 [2010] [internal quotation marks and citations omitted], lv denied 15 NY3d 956 [2010]; see CPL 140.10 [1] [b]). "[P]robable cause for a warrantless arrest may be supplied, in whole or part, through hearsay information, provided it satisfies the two-part Aguilar-Spinelli test requiring a showing that the informant is reliable and has a basis of knowledge for the information imparted" (People v Bell, 5 AD3d 858, 859 [2004] [internal quotation marks and citation omitted]; see People v Johnson, 66 NY2d 398, 402 [1985]).
The testimony at the hearing established that the CI, who had provided accurate information on approximately 50 prior occasions, was reliable (see People v Rodriguez, 52 NY2d 483, 489 [1981]; People v Maye, 43 AD3d 556, 557 [2007], mod 12 NY3d 961 [2009]). As to the basis of knowledge, Gavigan did not explicitly state whether the CI's information was based on personal knowledge, however, such personal knowledge can be inferred based upon the details that the CI provided of the criminal activity in question (see People v Elwell, 50 NY2d 231, 241 [1980]; People v McCracken, 91 AD2d 339, 341 [1983]). Notably, the police observed the CI enter his home only to leave, approximately 15 minutes later, with defendant, who matched the CI's description of the seller, and proceed towards the location of the controlled buy. Also, the CI not only gave a detailed description of the gun to Gavigan, but the police, a short time later, observed the controlled buy unfold just as the CI stated it would. Based upon this, it was reasonable for Gavigan to conclude that the CI's information was based upon personal knowledge, which is sufficient to establish the basis of knowledge prong of Aguilar-Spinelli (see People v Elwell, 50 NY2d at 241; People v McCracken, 91 AD2d at 941-942).
Defendant also argues that suppression is warranted because the police used unreasonable force to effectuate his arrest. To the extent that this issue is preserved, we find it lacking in merit. "Claims that [the police] used excessive force in the course of making an arrest . . . or other seizure of a person 'are properly analyzed under the Fourth Amendment's objective reasonableness standard'" (People v Smith, 95 AD3d 21, 26 [2012] [internal quotation marks and citations omitted], quoting Graham v Connor, 490 US 386, 388 [1989]; see People v Atkinson, 119 AD3d 1151, 1152 [2014], lv denied 26 NY3d 1006 [2015]). Such analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (Graham v Connor, 490 US at 396 [internal quotation marks and citations omitted]; accord People v Atkinson, 119 AD3d at 1152). The test also "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight" (Graham v Connor, 490 US at 396).
At the suppression hearing, defendant described that, during his arrest, he was "tackled from behind . . . [and] pile drove [sic] into the ground," and he "landed with [his] face turning to the right" and that "there was another body on [him] and then another knee on [him]." Defendant also testified that, prior to his arrest, he had an "inguinal hernia." At the jail after his arrest, defendant noticed blood coming from his rectum and eventually had a medical examination, [*3]which did not reveal any bleeding. It is unclear from defendant's testimony how being tackled from behind and landing on his face during the arrest was the cause of bleeding in his rectum, rather than his preexisting hernia. Accordingly, given that the police believed that defendant, who was on a public street, was armed, the level of force used to detain defendant was reasonable to ensure the safety of the police as well as others (compare People v Atkinson, 119 AD3d at 1153; People v Price, 112 AD3d 1345, 1346 [2013]; People v Smith, 95 AD3d at 26-27).
Lastly, we decline to modify defendant's sentence in the interest of justice. Defendant was sentenced to significantly less than the maximum allowable sentence for the crimes to which he pleaded guilty (see Penal Law §§ 70.02 [3] [b]; 70.06 [6] [b]). The record reflects that, in imposing the sentence, County Court considered defendant's lengthy criminal history, as well as his long history of drug addiction. Therefore, on the record before us, we discern no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Nieves, 166 AD3d 1380, 1382 [2018]; People v Rumola, 164 AD3d 1550, 1551 [2018]).
Clark, J.P., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.